IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALETHEA T. A.,[1] )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of Social Security,[2] )<br>)<br>    Defendant. ) | No. 21 C 2167<br><br>Magistrate Judge Gabriel A. Fuentes |

### MEMORANDUM OPINION AND ORDER[3]

Before the Court is Plaintiff Alethea T. A.'s motion for summary judgment seeking remand of the Administrative Law Judge's ("ALJ") opinion denying her application for Disability Insurance Benefits ("DIB") (D.E. 16) and the Commissioner's cross motion for summary judgment to affirm that decision. (D.E. 22.)

### I.     PROCEDURAL HISTORY

Plaintiff filed her claim for benefits on December 28, 2017, alleging she has been disabled since May 22, 2016.[4] (R. 17.) On September 12, 2019, Plaintiff and a vocational expert ("VE")

---

[1] The Court in this opinion is referring to Plaintiff by her first name and first initials of her last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Kilolo Kijakazi for former Commissioner Andrew Saul as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On May 3, 2021, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 8.)

[4] Plaintiff initially alleged that her disability began August 1, 2015, but amended the onset date to May 22, 2016. (R. 17.)

testified at a hearing before the ALJ, and on October 25, 2019, ALJ Janice M. Bruning found Plaintiff not disabled. (R. 17-37.) Plaintiff's appeal of that decision is now before the Court.[5]

## II. ADMINISTRATIVE RECORD

Plaintiff injured her neck and left shoulder and initially stopped working in August 2015 before her alleged onset date of May 22, 2016. After conservative treatment failed, Plaintiff successfully underwent surgical intervention in January 2017 and was released in September 2017, without restriction, to her job as a parcel post machine operator that she performed at the heavy exertion level. While Plaintiff was at work in November 2017, she suffered a new injury to her right shoulder.

### A. Hearing

On September 12, 2019, Plaintiff, who was represented by counsel, testified at a hearing before an ALJ. (R. 43-58.) Plaintiff stated that she went back to work in late 2017 but after working for seven weeks, she suffered a new injury at her job and thereafter stopped working. (R. 49.) Plaintiff testified that she takes medication for hypertension, uses an inhaler, treats her diabetes with Metformin, treats her pain with medication and attends physical therapy twice a week. (R. 49-50.) Plaintiff further testified that she does not take medication for depression or anxiety. (R. 50.) She stated that she can walk about a block before she has to stop; she can stand in one place for five or ten minutes; she can sit for 15 to 20 minutes; she can lift five pounds; she has difficulty climbing stairs, stooping, reaching overhead and to the front; she occasionally has difficulty using her hands; she has difficulty sleeping at night and sleeps two or three times a week during the day; and she drives twice a week. (R. 50-53.)

---

[5] The Appeals Council ("AC") subsequently denied review of the opinion (R. 4-10), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

### B. ALJ Opinion

The ALJ applied the five-step inquiry required by the Social Security Act in reaching the decision to deny Plaintiff's request for benefits. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 22, 2016, the amended alleged onset date. (R. 19.) At Step Two, the ALJ determined that Plaintiff suffered from the following severe impairments: spinal disorder, osteoarthritis of the bilateral shoulders, status post right elbow surgery, asthma, and obesity. (R. 20.) The ALJ determined that Plaintiff's physical and mental impairments of pain in legs and right hip; hypertension; diabetes mellitus; bilateral knee replacements; and depression were all` non-severe because they did not last or were not expected to last at least 12 continuous months. (*Id.*) In support of this finding, the ALJ assessed the so-called "paragraph B criteria" and found that Plaintiff's impairments caused a mild limitation in understanding, remembering or applying information; a mild limitation in interacting with others; no limitation in concentrating, persisting or maintaining pace; and no limitation in adapting or managing oneself. (R. 21-22.) At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Commissioner's listed impairments. (R. 23.)

Before turning to Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> [Plaintiff] can never climb ladders, ropes, or scaffolding, or crawl. She can no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, bend or twist. [Plaintiff] must avoid concentrated exposure to temperature extremes, wetness, humidity, lung irritants and work hazards such as unprotected heights, and dangerous moving machinery. She can reach in all directions bilaterally no more than frequently. [Plaintiff] can use the upper extremities no more than frequently to push/pull and can use the hands no more than frequently to handle, finger and feel.

(R. 25.) At Step Four, the ALJ noted that Plaintiff was unable to perform any past relevant work. (R. 35.) At Step Five, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform given her age, education, work experience and RFC, including the representative positions of office helper (58,000 jobs in the nation), information clerk (126,000 jobs in the nation), and counter clerk (296,000 jobs in the nation). (R. 35-36.) As such, the ALJ found that Plaintiff had not been under a disability since May 22, 2016, the date of the ALJ's decision. (R. 36.)

**III.      LEGAL STANDARD**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this Court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at Steps One through Four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs … in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

IV.	ANALYSIS

Plaintiff argues for remand on the grounds that the ALJ: (1) erred in evaluating the medical opinions; and (2) did not evaluate Plaintiff's allegations in accordance with SSR 16-3P.[6] Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security ("Pl.'s Br."; D.E. 17). The Court addresses each of these arguments below. Because we find that the ALJ supported the decision with substantial evidence, we affirm the decision.

A.	**The ALJ Properly Evaluated the Medical Opinions.**

Plaintiff argues that the ALJ erred in evaluating the opinions of Judy L. Law, M.D. (Plaintiff's treating physician), Kevin C. Tu, M.D. (an orthopedic surgeon who treated Plaintiff's shoulder injuries), and the State Agency medical consultants by failing to weigh the evidence. But her position is really a request to reweigh the evidence, which this Court cannot do. *Reynolds*, 25 F.4th at 473. After Plaintiff summarized the alleged errors of each of these medical professionals, she then suggested that in combination, her impairments could have a greater impact on her ability to work than that found by the ALJ, and therefore, the ALJ's failure to consider and explain how she considered Plaintiff's impairments and the medical opinions in the aggregate is grounds for remand.

For claims filed after March 27, 2017, such as this one, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [the plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). "The most important factors" to consider in evaluating the persuasiveness of a medical source's opinion are

---

[6] In her opening brief, Plaintiff raised a constitutional challenge to the appointment of the Commissioner. Pl.'s Br. at 14-16. After reviewing the Commissioner's response, Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."; D.E. 23) at 3-9, the Plaintiff withdrew the argument. Plaintiff's Reply to the Commissioner's Memorandum in Support of the Commissioner's Decision ("Pl.'s Reply"; D.E. 24) at 14, n.5. Accordingly, the Court does not address it here.

5

"supportability" (in the medical source's explanations and medical evidence) and "consistency" (with the evidence from other medical and nonmedical sources in the record), and ALJs must explain how they considered these factors. *Id.* at § 404.1520c(b)(2) and (c). ALJs "may, but [are] not required to" explain how they considered a medical source's specialization or relationship with a claimant. *Id.*

### 1. Dr. Law

Plaintiff first addresses the ALJ's rejection of Dr. Law's opinion, arguing that the opinion was not "durational, as it suggests that the claimant will improve with treatment" and the contemporaneous treatment notes reflected full upper extremity strength and only mildly diminished range of motion. (Pl.'s Br. at 2 quoting R. 32.) Plaintiff argues the ALJ did not provide a "good explanation" for rejecting Dr. Law's opinion. Pl.'s Br. at 2 quoting *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (discussing that a "good explanation" is expected for the unusual step of rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled). This Court disagrees with Plaintiff and is especially mindful of the post-March 27, 2017 regulations that focus on supportability and consistency rather than the pre-March 27, 2017 "controlling weight" and "good reasons" standard. *Compare* 20 C.F.R. §404.1572(c)(2) *with* 20 C.F.R. §404.1520c(a)(b).

The ALJ reasonably evaluated multiple opinions from Dr. Law dated between November 2017 and January 2018. The ALJ recognized that over that time period, Dr. Law provided multiple temporary restrictions indicating Plaintiff was unable to work or should remain off work. (R. 32 citing R. 711, 716, 718, 734.) As for Plaintiff's argument that the ALJ erred in rejecting Dr. Law's opinion because it was not "durational" and suggested Plaintiff's condition would improve, Plaintiff sees the ALJ's rejection of that opinion as not logical. Pl.'s Br. at 2. To be granted

benefits, a plaintiff must be disabled for a "continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). This Court does not need to get into the weeds of what is or is not logical in Plaintiff's argument, because the ALJ discussed that Dr. Law's opinions were not durational in nature; the ALJ noted that these opinions referred to a discrete period of time that was less than 12 continuous months.[7] (R. 32.) *See Migdalia M. v. Saul*, 414 F. Supp. 3d 1126, 1133 (N.D. Ill. 2019) (finding that from time to time, while recovering from surgery, plaintiff would have been unable to work, but in order to receive benefits a plaintiff must be "disabled" for a continuous period of not less than 12 months). The ALJ also noted that Dr. Law's opinions were inconsistent both with each other (initially off work three weeks then for several months) and also that of Eric Roberts, NP, who opined that Plaintiff should be off work for four days. (R. 32.) The ALJ also explained that the Dr. Law opinions failed to provide functional limitations or explain why Plaintiff was prohibited from working. (*Id.*)

In addition, Plaintiff argues that the ALJ erred in failing to assess the record as a whole because the ALJ never weighed the evidence in the first place. Pl.'s Reply 3-4. The Court disagrees. Here, the ALJ discussed Dr. Law's various treatment notes, finding her opinion not fully consistent with the contemporaneous physical examination such as full strength in the upper extremities with some mildly diminished range of motion in the right shoulder; and minimal complaints and objective abnormalities in Plaintiff's neck or left shoulder and no abnormalities in her legs. (R. 32-33.) Furthermore, the ALJ described Dr. Law's complete prohibition from using hands as inconsistent with Plaintiff's ability to perform self-care tasks, use the computer, and drive.

---

[7] The Commissioner argues that Dr. Law stated that Plaintiff was able to return to work on April 5, 2018 with no restrictions indicated on the return to work verification form, thus not meeting the required twelve-month continuous period. (Def.'s Mem. at 23 citing R. 699.) However, as Plaintiff discusses, the ALJ found this statement not consistent with the Agency's criteria for disability determinations as it did not reflect functional limitations and longitudinal functioning. (Pl.'s Reply at 2 citing R. 34.)

(R. 33.) The ALJ also analyzed Dr. Law's opinion that Plaintiff cannot stand or walk and determined it was not supported by objective findings but rather only by Plaintiff's subjective complaints and also inconsistent with Plaintiff's reported ability to walk for one mile. (*Id.*) The ALJ did weigh this opinion by discussing it in the context of the contemporaneous medical evidence concerning Plaintiff's impairments. *See Crystal M. on behalf of D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *6 (N.D. Ill. May 18, 2022) (discussing the ALJ's identification of contrary evidence as sufficient to show how ALJ weighed evidence to support RFC). Plaintiff is asking the court to reweigh the evidence, which we cannot do. *Reynolds*, 25 F.4th at 473.

### 2. Dr. Tu

The Plaintiff next argues that the ALJ erred in evaluating Dr. Tu's opinion that from April through August 2018, Plaintiff could not lift greater than 10 pounds or lift overhead with the left arm. Pl.'s Br. at 6; R. 33, citing R. 903, 913, 921-23; 1587-88. Plaintiff acknowledges that the ALJ found Dr. Tu's opinions not persuasive because they were inconsistent with his March 2018 opinion and inconsistent with mild objective findings, and also because Dr. Tu did not explain how evidence supported the limitations, especially in light of Plaintiff's "history of questionable effort." *Id.* Once again, Plaintiff argues that the ALJ failed to provide a "good explanation" for rejecting Dr. Tu's opinions. *Id.* The Court disagrees, again, relying on the post-March 27, 2017 regulations that focus on supportability and consistency.

The ALJ offered plenty of reasoning to support rejection of Dr. Tu's opinions. The ALJ concluded that Dr. Tu did not provide objective support for his opinion and did not provide an explanation for how he determined such limitations. (R. 33.) The ALJ also stated that Dr. Tu's opinions were not supported by or consistent with treatment records that showed only mild deficits in strength and motion. (R. 33 citing R. 919-24, 1587-89.) The ALJ also pointed out that Dr. Tu's

8

opinions were "inconsistent with his March 2018 opinion" that Plaintiff could return to work without any limitations with her right shoulder. (R. 33 citing R. 902.) Dr. Tu never indicated Plaintiff was unable to perform her job with the use of her right arm. (R. 902.) The ALJ discussed that the record does not support such a drastic change – in April 2018, Plaintiff could lift no more than 10 pounds and perform no overhead activity with left arm, but in March 2018, Plaintiff could return to full duty work – in Dr. Tu's opinion in just a month's time. (R. 33.)

In the context of addressing Dr. Tu's lack of objective support for his opinions and lack of explanation for his determination of those limitations, the ALJ pointed to Plaintiff's history of "questionable effort" at the functional capacity evaluation, which concluded that Plaintiff was capable of carrying up to 70 pounds occasionally despite her subjective reports of longstanding left arm difficulties. (R. 33, 530, 532.) The ALJ found Dr. Tu's restriction inconsistent with objective findings that showed mild (4+/5) deficits in strength and range of motion. (R. 33 citing R. 921, 923, 1587.) Here, the ALJ reasonably relied on the prior administrative medical findings of the state agency medical consultants Vidya Madala, M.D. and Lenore Gonzalez, M.D., who reviewed the record and concluded that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently. (R. 33.) Irrespective of that, as the Commissioner pointed out, Dr. Tu's restrictions were temporary, lasting a mere five months in duration, less than the 12 consecutive months necessary for disability. Def.'s Mem. at 26; 42 U.S.C. §423(d)(1)(A).

The ALJ reasonably supported her decision with substantial evidence. Plaintiff is once again asking this Court to reweigh the evidence. The Court declines to do so.

  **3. State Agency medical consultants**

Plaintiff takes issue with the ALJ's having found persuasive the opinions of the non-treating State Agency medical consultants, Drs. Madala and Gonzalez. These doctors opined that

9

Plaintiff could perform light work, with certain postural, manipulative, and environmental limitations. (R. 30.) The ALJ determined these opinions were persuasive but disagreed with the limitation on vibration because Plaintiff was able to use her hands effectively to hold on to things that vibrate, such as the steering wheel of a car. (R. 30 citing R. 949.)

In February 2018, Dr. Madala reviewed the record and concluded that Plaintiff remained capable of performing light work with frequent bilateral overhead reaching or climbing of ramps and stairs; occasional stooping, kneeling, crouching, of crawling; and no climbing of ladders, ropes, and scaffolding. (R. 66-68.) At the reconsideration level in September 2018, Dr. Gonzalez concluded Plaintiff was capable of performing light work with limited pushing and pulling with her arms, bilateral reaching (including overhead), handling and fingering; occasional climbing of ramps and stairs, stooping, kneeling, or crouching; no crawling or climbing ladders, ropes, and scaffolding; and needed to avoid concentrated exposure to extreme temperatures, wetness, humidity, vibration, pulmonary irritants, and hazards. (R. 86-89.) Dr. Gonzalez also indicated the opinions of Dr. Law and Dr. Tu were not persuasive. (R. 89-91.)

The ALJ determined that Drs. Madala and Gonzalez were persuasive based on supportability and consistency. 20 C.F.R. §404.1520c(c)(1) (supportability along with consistency are the most important factors in determining persuasiveness of medical source's opinion). On supportability, the doctors supported their findings with "specific reference to the record," including mild imaging results, the ALJ reasoned. (R. 30.) On consistency, the ALJ determined that these doctors' opinions were consistent with the record evidence and the evidence presented at the hearing, which showed Plaintiff's reduced range of motion and diminished strength in the shoulders, slightly reduced sensation in her arms, and her improvement with physical therapy and medication. (*Id.*)

Plaintiff also argued that based on certain evidence of treatment visits after Drs. Madala and Gonzalez reviewed the record, the ALJ erred in treating the doctors' objective findings as significant and in projecting how the state agency consultants would interpret this evidence. Pl.'s Br. at 8. However, Plaintiff failed to articulate what additional limitations her citations support, and as such, any error in the ALJ's RFC is harmless. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding that "even if the ALJ's RFC assessment were flawed, any error was harmless" as it "is unclear what kinds of work restrictions might address [plaintiff's] limitations … because he hypothesizes none" and the "medical record does not supply any"); *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL 2269962, at *6 n.6 (N.D. Ill. May 28, 2019) (noting to establish that State agency consultant's opinion is outdated, a plaintiff shall "explain how later records would have led the ALJ to a different conclusion"). Additionally, both Drs. Madala and Gonzalez considered Plaintiff's November 2017 shoulder injury when rendering their opinions, and the ALJ adequately accounted for this injury when assessing the RFC.

Plaintiff further claims that the ALJ did not assess Plaintiff's combined impairments and the medical opinions, and that if she had done so, along with a myriad of other items, she would have found Plaintiff disabled, as Plaintiff takes issue with the ALJ discussing Plaintiff's impairments, including obesity, in separate paragraphs. Pl.'s Br. at 11. Yet the ALJ repeatedly indicated that she considered Plaintiff's impairments in combination, including how obesity, combined with her other impairments, caused additional stress on her body. (R. 20, 23-25, 28.) In addition, courts view the ALJ's opinion as a whole, applying a "common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

The ALJ specifically referenced SSR 19-2p, the Social Security Administration's guidance on obesity, and applied that guidance in the analysis. (R. 24, 28.) The ALJ noted that due to the

11

Plaintiff's obesity, she "experience[d] greater functional limitations than might be expected from her severe impairments alone" and, accordingly, the ALJ limited Plaintiff to light work with postural limitations. (R. 28.) Yet Plaintiff's physical examinations were not reflective of more restrictive functional limitations than the ALJ determined. (*Id.*) While Plaintiff "may have wanted the ALJ to say more [about obesity], the articulation requirement is a minimal one." *Mason M. v. Kijakazi*, Case No. 20 C 6122, 2023 WL 5720983, *6 (N.D. Ill. Sept. 5, 2023), citing *Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020). The ALJ's consideration of Plaintiff's obesity was supported by substantial evidence and Plaintiff's objections amount to little more than a disagreement regarding how the ALJ weighed that evidence, which the Court will not overturn. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

    **B.**    **The ALJ Properly Evaluated the Plaintiff's Subjective Symptoms in Accordance with SSR 16-3P.**

Social Security Regulation 16-3p guides an ALJ about how to evaluate the intensity and persistence of a claimant's subjective symptoms, so that he or she can determine how those symptoms might limit the claimant's ability to perform work-related activities.[8] The gist of Plaintiff's argument is that the ALJ erred in the subjective symptom analysis because the ALJ erred in evaluating Plaintiff's compliance with medical treatment and treatment history, erred in finding Plaintiff's symptoms less persuasive due to inconsistencies in the record, failed to properly assess Plaintiff's activities of daily living, erred in finding Plaintiff not persuasive because she was not forthcoming, and did not properly evaluate Plaintiff's work history.

Although an ALJ's decision must be "sufficiently detailed that [the court is] able to trace its path of reasoning," *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005), "an ALJ is not

---

[8] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2016-03-di-01.html, last visited on November 13, 2023.

required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence." *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013). To put it another way, "[a] reviewing court is charged with reading an ALJ's opinion as a whole and taking a common-sense approach to its review." *Winsted*, 923 F.3d at 478 citing in, *Brandi B. v. Kijakazi*, No. 21 C 4383, 2022 WL 2463558, at *6 (N.D. Ill. July 6, 2022). Moreover, an ALJ's determination about a plaintiff's subjective symptoms is entitled to great "deference," *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014), and will not be overturned unless it is "patently wrong." *Hohman v. Kijakazi,* 72 F.4th 248, 251 (7th Cir. 2023).

Here, we note that Plaintiff is not arguing that substantial evidence does not support the ALJ's conclusion, only that the ALJ failed to articulate her reasoning properly with respect to Plaintiff's subjective symptoms. The Court disagrees and finds that after considering the opinion as a whole, the ALJ's reasoning is traceable from the evidence to her conclusion that Plaintiff retains the RFC for a reduced range of light work. Specifically, the ALJ acknowledged that Plaintiff alleged disability beginning in May 2016 due to her limited ability to lift and carry more than zero to 10 pounds; walk anywhere from a block to a mile; stand for more than 10 minutes at one time; sit for more than 20 minutes at one time; use her hands; perform her daily activities without pain; and reach overhead. (R. 25, 29, citing R. 50-54, 243, 251-58, 270-78, 296, 649.) Plaintiff argues the ALJ erred in discounting her statements as inconsistent, claiming the inconsistencies were trivial. Plaintiff claims that her pain may have fluctuated and that her statements were consistent with being unable to perform no greater than sedentary work. Pl.'s Br. at 11-12. Yet an ALJ is entitled to discount symptom allegations that are inconsistent with contemporaneous reports to providers. *See Murphy v. Berryhill*, 727 F. App'x 202, 207 (7th Cir. 2018) (finding subjective symptom evaluation was "properly based on incongruity between the relatively modest symptoms [Plaintiff]

reported to her doctors and the more severe symptoms [Plaintiff] … reported to the ALJ"). The ALJ explained that she discounted Plaintiff's subjective statements not only because they were inconsistent with each other, and the ALJ did not find Plaintiff's statements regarding the severity of her symptoms and limitations reliable because the objective evidence did not substantiate the level of severity alleged by Plaintiff. (R. 26.) Further, the ALJ supported her findings when she:

- discussed treatment records that showed Plaintiff was capable of lifting 40 pounds shortly after her alleged onset date in August 2016 and was released to return to heavy work without any lifting restrictions in September 2017. (R. 29-30, citing R. 440, 496, 556.)

- considered Plaintiff's new injury to her right shoulder after returning to work in November 2017, but noted that Plaintiff maintained slightly reduced to normal strength in her neck and bilateral shoulders and no more than slightly diminished grip and wrist strength at later examinations. (R. 26-27, 29, citing R. 623-24, 651, 695, 709, 728, 732, 896, 903, 911, 921, 923, 978, 1007, 1119.)

- noted Plaintiff's testimony that she could not walk more than a block, but informed the consultative examiner that she could walk for a mile. (R. 50, citing R. 649.)

- considered Plaintiff's ability to carry laundry up a flight of stairs without issue; normal gait; ability to heel walk, toe walk, and get on and off the examination table; normal single leg balance; and full strength in her legs. (R. 29-30, citing R. 395, 651.)

- pointed out that despite Plaintiff's reported difficulties sitting at the hearing, she failed to report any sitting difficulties to treating providers. (R. 28-29, 51.) Plaintiff demonstrated normal sitting tolerance and posture on examination. (R. 651.)

- highlighted that although Plaintiff reported hand numbness and tinging at the time of her alleged onset date, she repeatedly denied difficulty with fine motor functioning or dropping items and did not exhibit any deficits during examinations prior to 2018. (R. 29, citing R. 429, 432, 438, 440, 442, 449.)

- discussed Plaintiff's ability to frequently handle and finger despite variable and submaximal effort at a functional capacity evaluation and exhibited only mildly impaired grasping, fingering, and grip strength during examinations since 2018. (R. 29, 32, citing R. 530, 532, 606-09, 651, 695, 709.)

Furthermore, the ALJ reasonably evaluated Plaintiff's effort at the functional capacity evaluation. The ALJ did not indicate that her effort at the evaluation was determinative of her

14

effort throughout a five-year period, but rather suggested the evaluation may not be an accurate assessment of Plaintiff's capabilities. (R. 32.) It is Plaintiff's burden to prove that she is disabled, yet she failed to explain why the conclusion of the evaluation that she remained capable of frequent handling and fingering despite her variable and submaximal effort compelled the ALJ to find her ability to use her hands more limited. 20 C.F.R. §404.1512(a); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (reminding the plaintiff that she "bears the burden of proving that she is disabled"). The Seventh Circuit has also upheld an ALJ's subjective symptom evaluation where an ALJ discounts a plaintiff's statements because of reduced effort on examination. *See Jeske v. Saul*, 955 F.3d 583, 591 (7th Cir. 2020).

Next, the ALJ discussed Plaintiff's treatment history, noting the effectiveness of the treatments and medication contradicted her testimony of constant and disabling pain. 20 C.F.R. §404.1529(c)(3)(iv)-(v). The ALJ's conclusions were supported by substantial evidence insofar as the ALJ noted that:

- Plaintiff's right elbow surgery nearly two years prior to her alleged onset proved effective. Plaintiff had full range of motion of her elbows on examinations despite intermittent complaints of pain. (R. 28, citing R. 465, 623, 649-50.)

- Plaintiff's remote history of bilateral knee replacement was discussed by the ALJ and was noted that Plaintiff rarely reported knee pain and had a normal gait during examination. (R. 21, 23-24, 30, citing R. 651, 1359-61.)

- Plaintiff's neck surgery and subsequent physical therapy resulted in significant improvement, as she reported no ongoing difficulties using her arms, exhibited normal findings on examinations, and was able to return to a heavy exertion job without restrictions by September 2017. (R. 26, citing R. 409-13, 430, 432-35, 496, 556.)

- Plaintiff's new injury in November 2017 was acknowledged along with her successful completion of physical therapy in May 2018. (R. 27, citing R. 1275-77.)

- Plaintiff reported significant pain relief with medication. (R. 28, 518, 561.)

The ALJ also relied on Plaintiff's failure to follow-up with a neurology referral as undermining her allegations of disabling pain. (R. 27.) *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (finding that turning down other treatment options is "another reason to think she may have been exaggerating her symptoms").

The ALJ also analyzed Plaintiff's reported daily activities in her analysis and pointed out that despite Plaintiff reporting that pain interfered with her ability to perform her daily activities, the treatment providers indicated that she was capable of performing all of her daily activities. (R. 25, 29 citing R. 1549.) Finally, the ALJ considered Plaintiff's ability to return to work at a heavy exertion position without restrictions in September 2017, suggesting greater functioning than her allegations of disability since May 2016 indicated. (R. 29 citing R. 556.) The ALJ never concluded this was an unsuccessful work attempt. (R. 19, 31.) Yet Plaintiff's ability to perform heavy exertion work for three months until she sustained a new injury certainly suggests that Plaintiff was more capable than her allegations of disability since May 2016 indicate. In addition, the Court finds that the ALJ's lack of discussion of Plaintiff's work history prior to her alleged onset date was not an error by the ALJ in her subjective symptom analysis because the ALJ was not required to discuss every factor. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (noting the ALJ's silence on a plaintiff's work history "is not enough to negate the substantial evidence supporting the adverse credibility finding").

The fact that Plaintiff may wish that the ALJ had described her findings differently or in more detail, or that the ALJ had explained how she considered every piece of evidence, does not obviate our finding that in reviewing the ALJ's opinion as a whole, we can trace an accurate and logical bridge from the evidence to the ALJ's conclusion that Plaintiff's symptoms were not as severe as she alleged and did not support a finding that she was disabled. For "[e]ven if reasonable

16

minds could differ on the weight the ALJ gave to the medical evidence," the Court does not substitute its judgment for that of the ALJ's by reweighing the evidence. *Karr*, 989 F.3d at 513. Additionally, the ALJ "is not required to spell out in the record every piece of evidence that [s]he considered and then accepted or rejected." *Crowell v. Kijakazi*, 72 F.4th 810, 815 (7th Cir. 2023). Rather, in determining a claimant's RFC, the ALJ must "sufficiently canvass[] the record and appropriately weigh[] the evidence to determine the conditions, if any, that would allow [the plaintiff] to work given her illness," including "considering the entire medical record, [the plaintiff's] daily activities, and her hearing testimony." *Hohman*, 72 F.4th at 250-51. That is precisely what the ALJ did here, and thus, the Court grants the Defendant's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment (D.E. 22) and denies Plaintiff's motion for summary judgment. (D.E. 16.)

**ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: November 21, 2023**